UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
2015 JUN 16 P 4:54



**UNITED STATES OF AMERICA** )
)
v. ) CASE NO. 3:15-CR-91
)
) JUDGES Varlan/Shirley
**JOSEPH E. ARMSTRONG** )
)

## INDICTMENT

The Grand Jury charges as follows:

### COUNT ONE
### Conspiracy to Defraud the United States

**The Conspiracy**

Beginning in or about December, 2006 and continuing until in or about November, 2013, in the Eastern District of Tennessee and elsewhere, JOSEPH E. ARMSTRONG, defendant herein, did unlawfully, voluntary, intentionally and knowingly conspire, combine, confederate, and agree with other individuals, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, federal income taxes.

**Parties, Persons, and Entities**

At all times relative to this indictment,

1. The defendant, JOSEPH E. ARMSTRONG was a resident of Knoxville, Tennessee and an elected member of the Tennessee General Assembly House of Representatives.

2. Charles M. Stivers (hereinafter "Stivers") was a licensed Certified Public Accountant (CPA) living in Manchester, Kentucky and doing business as a CPA with clients in Kentucky and Tennessee. He worked as the defendant's CPA.

3. Unindicted co-conspirator, an individual whose identity is known to the Grand Jury, was a friend and business associate of the defendant, JOSEPH E. ARMSTRONG.

4. Bowling Branch Investments, Inc. (BBI) was a Kentucky corporation that had a stated purpose of engaging in commercial and residential real estate investment.

5. Tru Wholesale, LLC (TW) was a Tennessee business engaged in the wholesale tobacco industry selling cigarettes and other tobacco products.

## Object of the Conspiracy

It was the object of the conspiracy that defendant JOSEPH E. ARMSTRONG and the other co-conspirators would profit from the sale Tennessee cigarette tax stamps by purchasing the stamps and subsequently selling them at a profit after the Tennessee cigarette tax stamp rate was increased by a new state law. Defendant JOSEPH E. ARMSTRONG and the co-conspirators sought to increase these profits by hiding them in a nominee company to avoid the assessment and payment of federal income taxes.

## Manner and Means of the Conspiracy

The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following:

1. Beginning sometime in 2006 and as part of the conspiracy, the defendant, JOSEPH E. ARMSTRONG, devised a scheme to profit from the expected increase in the State of Tennessee cigarette tax stamps.

2. It was a further part of the conspiracy that defendant, JOSEPH E. ARMSTRONG, would elicit others to invest and finance his scheme to surreptitiously profit from the increase in the Tennessee tax rate.

3. It was further part of the conspiracy that defendant, JOSEPH E. ARMSTRONG, and his co-conspirators would borrow money to maximize their investment and profits in the scheme.

4. It was a further part of the conspiracy that defendant, JOSEPH E. ARMSTRONG had an agreement with TW to purchase the cigarette tax stamps from TW at the $0.20 tax rate.

5. It was a further part of the conspiracy that the defendant, JOSEPH E. ARMSTRONG, would then hold the cigarette tax stamps purchased from TW at the $0.20 rate in anticipation of the tax rate being increased to a $0.60 rate.

6. It was a further part of the conspiracy that defendant, JOSEPH E. ARMSTRONG, would, as a member of the Tennessee General Assembly House of Representatives Committee on the Finance Ways and Means vote to advance legislation to the Tennessee General Assembly that would increase the Tennessee cigarette tax rate to $0.60.

7. It was a further part of the conspiracy that defendant, JOSEPH E. ARMSTRONG, would, as a member of the Tennessee General Assembly House of Representatives vote to enact legislation to the Tennessee General Assembly that would increase the Tennessee cigarette tax rate to $0.60.

8. It was a further part of the conspiracy that as a result of the legislation defendant, JOSEPH E. ARMSTRONG, voted to enact the Tennessee cigarette tax rate which was ultimately increased to $0.62 on June 7, 2007.

9. It was further part of the conspiracy that the defendant, JOSEPH E. ARMSTRONG, and his co-conspirators would hide the source of their profits from the scheme by having them directed to a nominee company, BBI.

10. It was further part of the conspiracy that the defendant, JOSEPH E. ARMSTRONG, and his co-conspirators would have their profits returned to them from the bank account of BBI after paying a percentage to Stivers to perform this service.

11. It was further part of the conspiracy that the defendant, JOSEPH E. ARMSTRONG, and co-conspirators would further hide the source and nature of the profits and increase the profits from the scheme by failing to report them on their federal income tax forms.

### Overt Acts

In furtherance of the conspiracy and to bring about its object, defendant Joseph E. Armstrong and other co-conspirators committed the following overt acts, among others, in the Eastern District of Tennessee and elsewhere:

1. In or about June 2007, the defendant, JOSEPH E. ARMSTRONG, and an unindicted co-conspirator applied for a loan from a local bank.

2. On or about June 6, 2007, the defendant, JOSEPH E. ARMSTRONG, obtained a check from a local bank made payable to Tru Wholesale in the amount of $250,000 which he returned to the bank as it was dated before the bill raising the Tennessee cigarette tax was signed into law.

3. On or about June 8, 2007, the defendant, JOSEPH E. ARMSTRONG, obtained a second check from a local bank made payable to Tru Wholesale in the amount of $250,000.

4. On or about June 8, 2007, the defendant, JOSEPH E. ARMSTRONG, delivered to Tru Wholesale a $250,000 check to pay for 42 roles of cigarette tax stamps.

5. On or about June 10, 2008, Stivers received a check from TW in the amount of $140,160.

6. On or about June 10, 2008, Stivers deposited into the BBI bank account a check in the amount of $140,160.

7. On or about June 10, 2008, Stivers created a check drawn on the BBI bank account and made payable to the defendant, JOSEPH E. ARMSTRONG, in the amount of $140,160.

8. On or about June 11, 2008, defendant, JOSEPH E. ARMSTRONG, deposited a check in the amount of $140,160 into his bank account.

9. On or about June 17, 2008, Stivers received a check from TW in the amount of $122,640.

10. On or about June 18, 2008, Stivers deposited into the BBI bank account a check in the amount of $122,640.

11. On or about June 20, 2008, Stivers created a check drawn on the BBI bank account and made payable to the defendant, JOSEPH E. ARMSTRONG, in the amount of $122,640.

12. On or about June 23, 2008, defendant, JOSEPH E. ARMSTRONG, deposited a check in the amount of $122,640 into his bank account.

13. On or about July 23, 2008, Stivers received a wire transfer from TW into the BBI bank account in the amount of $105,120.

14. On or about July 29, 2008, Stivers created a check drawn on the BBI bank account made payable to the defendant, JOSEPH E. ARMSTRONG, in the amount of $88,301.

15. On or about July 31, 2008, defendant, JOSEPH E. ARMSTRONG, deposited a check in the amount of $88,301 into his bank account.

16. On or about September 10, 2008, Stivers received a check from TW in the amount of $105,120.

17. On or about September 11, 2008, Stivers deposited into the BBI bank account a check in the amount of $105,120.

18. On or about September 15, 2008, Stivers created a check drawn on the BBI bank account and made payable to the defendant, JOSEPH E. ARMSTRONG, in the amount of $88,301.

19. On or about September 15, 2008, Stivers received a check from TW in the amount of $105,120.

20. On or about September 15, 2008, Stivers deposited into the BBI bank account a check in the amount of $105,120.

21. On or about September 15, 2008, Stivers created a check drawn on the BBI bank account and made payable to the unindicted co-conspirator in the amount of $88,301.

22. On or about September 17, 2008, unindicted co-conspirator deposited a check in the amount of $88,301 into his bank account.

23. On or about September 19, 2008, defendant, JOSEPH E. ARMSTRONG, deposited a check in the amount of $88,301 into his bank account.

24. On or about October 16, 2008, Stivers received a check from TW in the amount of $157,680.

25. On or about October 21, 2008, Stivers deposited into the BBI bank account a check in the amount of $157,680.

26. On or about October 23, 2008, Stivers created a check drawn on the BBI bank account and made payable to the defendant, JOSEPH E. ARMSTRONG, in the amount of $132,451.

27. On or about October 24, 2008, defendant, JOSEPH E. ARMSTRONG, deposited a check in the amount of $132,451 into his bank account.

28. On or about October 15, 2009, the defendant, JOSEPH E. ARMSTRONG, and Stivers caused to be filed a false Form 1040 income tax return for tax year 2008 belonging to the defendant, JOSEPH E. ARMSTRONG, and his spouse which failed to disclose income from the TW/BBI scheme.

29. In or about October 2009, Stivers created a fictitious note in his office computer files to support the tax evasion scheme involving himself, the defendant, and others.

30. On or about October 31, 2013, Stivers created and provided to law enforcement what purported to be a handwritten note dated October 2009 that corroborated the note he originally entered into his computer files in October 2009 to cover-up the tax evasion scheme.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
## Attempt to Evade and Defeat Tax

1. The allegations set forth above in support of Count One are hereby re-alleged and incorporated herein by reference.

2. On or about the 15th day of October, 2009, in the Eastern District of Tennessee, JOSEPH E. ARMSTRONG, a resident of Knoxville, Tennessee, who during the calendar year 2008 was married, did willfully attempt to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States of America for the calendar year 2008, by preparing and causing to be prepared and by signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, which was filed with the Internal Revenue Service and in that false return, it was stated that their joint taxable income for the calendar year was the sum of $152,999, and the amount of tax due and owing thereon was the sum of $36,441, in fact, as he then and there knew, his taxable income for the calendar year was the sum of $471,418, upon which taxable income there was owing to the United States an income tax of approximately $141,222.

In violation of Title 26, United States Code, Section 7201.

## COUNT THREE
## Fraud and False Statements

1. The allegations set forth above in support of Counts One and Two are hereby re-alleged and incorporated herein by reference.

2. That on or about October 15, 2009, in the Eastern District of Tennessee and elsewhere, JOSEPH E. ARMSTRONG, a resident of Knoxville, Tennessee, did willfully make and subscribe and did willfully aid, abet, assist, and cause to be so made and subscribed a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 2008, which was verified by a written declaration that it was made under the penalties of perjury and JOSEPH E. ARMSTRONG

did not believe the return, which was filed with the Internal Revenue Service, to be true and correct as to every material matter in that the return failed to disclose that he was engaged in the operation of an investment activity from which he derived gross receipts and received income and JOSEPH E. ARMSTRONG then and there well knew that he was required by law and regulation to disclose the operation of this investment activity, the gross receipts he derived therefrom, and the income from this investment activity.

In violation of Title 26, United States Code, Section 7206(1) and Title 18, United States Code, Section 2.

A TRUE BILL:

**SIGNATURE REDACTED**

GRAND JURY FOREPERSON

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

By: *[signature]*
CHARLES E. ATCHLEY, JR,
Assistant United States Attorney